STATE ex rel. MORRIS et al., Respondent, v. C. W. MONTGOMERY, Appellant.

Springfield Court of Appeals, January 8, 1912.

1. PROBATE COURTS: Disqualifying Judge: Insanity Inquiry: Interest of Party Making Affidavit. In a proceeding before a probate court to examine into the sanity of one H, the brothers of H filed an affidavit against the probate judge for the purpose of having the cause transferred to the circuit or county court for further determination, under sections 4062, 4063, Revised Statutes 1909. The probate judge refused to make the order and in a mandamus proceeding, on appeal, it is *held* that the insanity inquiry was a "case" within the meaning of the statute in which the probate judge could be disqualified from acting, but the affidavit filed is examined and *held* not

sufficient for the purpose of disqualifying the probate judge and having the cause heard in the circuit or county court, for the reason that it did not appear therefrom that the affiants had any financial interest in the case.

2. ———: ———: "Case" in which Judge May be Disqualified. The term "case" as used in section 4062, Revised Statutes 1909, means any matter pending before the probate judge which is the subject of judicial investigation.

3. ———: ———: Sufficiency of Affidavit: Oral Evidence Not Admissible. Where an affidavit has been filed under section 4063, Revised Statutes 1909, for the purpose of ousting the probate judge of jurisdiction and having the cause transferred to the circuit or county court, the probate judge in passing upon the sufficiency of the affidavit cannot go behind the affidavit to ascertain its truth or falsity, nor can he hear oral evidence upon any question covered by the affidavit.

4. ———: ———: Interest of Party Making Affidavit. A blood relationship to the party in interest does not authorize the making of the affidavit required under section 4063, Revised Statutes 1909, for the purpose of getting a cause transferred from the probate to the county or circuit court for further determination. A financial interest in the matter to be decided is essential to qualify the party to make the affidavit.

5. INSANITY INQUIRY: Probate Court: Jurisdiction: Property Interest Essential. The basis of the probate court's jurisdiction in an inqury as to the sanity of the party is the ownership of property by the alleged insane person and it is for the purpose primarily of caring for that property that the probate court is given jurisdiction.

Appeal from Dade Circuit Court.—*Hon. B. G. Thurman,* Judge.

REVERSED.

*Neale & Newman* for appellant.

(1) A party in interest only is empowered by the statute to file the affidavit of prejudice disqualifying a probate judge, R. S. 1909, sec. 4063. The words, "party in interest" and words of similar meaning have been universally held to mean a party in financial interest. Railroad v. Gould, 20 N. W. (Ia.) 464; In re Shepard's Estate, 32 Atl. Rep. 1040; Jele v. Lem-

berger, 45 N. E. (Ill.) 279. So the words "parties to the suit" have been held to mean those having the right to control the proceedings, to make defense, to produce or examine witnesses and to appeal. (2) The existence of the $50 in old partnership accounts did not bring relators, A. C. Morris, within the statute. The interest contemplated must be direct and substantial and not indirect. In re Shepard's Estate, 32 Atl. Rep. 1040; Railroad v. Gould, 20 N. W. 464. (3) Cases cannot be decided in appellate courts on a different theory than tried upon below. Bank v. Zook, 133 Mo. App. 603, and it was just as clearly error to permit respondents to show financial relationship in circuit court when no such relationship was shown or alleged in the affidavit, in the probate court. State v. Robinson, 117 Mo. 664; State v. Cox, 65 Mo. 32; State v. Owens, 79 Mo. 631. (4) The appointment of guardian is not a "case" under section 4063 and respondents were not entitled to have the appointment certified out of probate court. The writ must therefore fail because more is asked than can be granted. State ex rel. v. Field, 37 Mo. App. 100; State ex rel. v. Railroad, 77 Mo. 147.

*Edwin Frieze* and *Foulk & Brown* for respondents.

(1) On the filing of respondents' affidavit in the probate court no testimony could be offered either in support or against said affidavit. It at once, and without any further action became mandatory on the judge to certify the case out. State ex rel. v. Gray, 100 Mo. App. 104; Graham v. People, 111 Ill. 253; Ansley v. Richardson, 95 Mo. App. 332; State ex rel. v. Sheppard, 192 Mo. 497. (2) The affidavit filed by Homer Hayward, and upon which the probate court must base its jurisdiction, prays that the relief it may have

granted shall be the holding of the inquiry as to the sanity of Emma Hawkins, and for the appointment of a guardian for her, all included in one prayer. They are inseparable elements and must be certified out together. State ex rel. v. Gray, 100 Mo. App. 103.

COX, J.—Action by mandamus to compel C. W. Montgomery, probate judge of Dade county to certify to the county or circuit court for trial an inquiry as to the sanity of Emma Hawkins and the appointment of guardian for her. On trial in circuit court a peremtory writ was ordered as requested and the defendant has appealed to this court.

On January 10, 1911, Homer Hayward who is a son-in-low to Emma Hawkins filed with the probate judge of Dade county an affidavit as provided by section 474, Stat. 1909, alleging that Emma Hawkins was a person of unsound mind and incapable of managing her affairs and that she was possessed of real and personal property of the value of $10,000 and asking that an inquiry be held to determine her sanity and that a guardian be appointed for her. On January 17, 1911, relators filed the following affidavit (omitting caption):

"A. C. Morris and J. F. Morris, being duly sworn upon their oath say that they are brothers of Mrs. Emma Hawkins, that the present probate judge C. W. Montgomery is incompetent to try and determine said cause, because of his interest therein and because said judge is related by marriage to some of the parties interested therein. Wherefore said A. C. Morris and J. F. Morris pray that an order be made in accordance with section 4062 transferring said cause to the circuit court or to the county court for further determination.

A. C. Morris & J. F. Morris."

On January 20, 1911, the application of relators to have the case certified to another court was overruled as appears from the following order:

"In the matter of the injury into the sanity of and the appointment of a guardian of the person of and curator of the estate of Mrs. Emma Hawkins.

Comes now informant, Homer Hayward, in person and by his attorneys and also comes Arthur C. Morris and Floyd Morris in person and by their attorney, Edwin Frieze, and it being admitted by all of said parties in open court that said Mrs. Emma Hawkins is in fact insane and that the said Arthur C. Morris and J. Floyd Morris have no financial interest directly or indirectly in this cause and that the informant, Homer Hayward, is the husband of Cliff Hayward, the only child and only heir of Mrs. Emma Hawkins, her husband being dead; and after hearing the arguments of counsel and being fully advised in the premises, the court overrules said motion for the reason, first that the parties filing said affidavit are not parties in interest and have no financial interest in this controversy and therefore said affidavit should not be considered by the court and second, that said motion is not in proper form."

A jury. was then empaneled and the inquiry resulted in a verdict finding said Emma Hawkins to be of unsound mind and incapable of managing her affairs. The court then appointed as her guardians Homer Hayward and C. F. Landers. On January 30, 1911, the relators sued out of circuit court of Dade county an alternative writ of mandamus which on trial was made peremptory requiring the probate judge to send the cause to either the county or circuit court.

As we view this controversy the questions for our determination are whether the statute applies to this proceeding and the sufficiency of the affidavit filed by relators alleging that the probate judge was interested and asking that the cause be certified to another court.

The statute under which the affidavit was filed Sec. 4063, Stat. 1909, as far as applicable to the questions here involved is as follows: "No judge of probate shall sit in a case in which he is interested or in which he may have been counsel or a material witness or related to either party or in the determination of any cause or proceedings in the administration and settlement of any estate of which he is or has been executor, administrator, guardian or curator when any party in interest shall object in writing verified by affidavit; and when such objections are so made such cause shall be certified to the county or circuit court, which court shall hear and determine the cause; and the clerk of the county or circuit court shall deliver to said probate court a full and complete transcript of the judgment, order or decree made in such cause which shall be kept with the papers in said office pertaining to said cause."

Does this statute apply to an insanity inquiry? The language of the statute is, "No judge of probate shall sit in a case in which he is interested, etc." Is this proceeding a case? If so the statute applies but if a proceeding of this character is not a case within the meaning of this statute then of course it does not apply.

Webster gives the following definition of case (in law), A suit or action at law, a cause. Then defines cause (in law), a suit or action in court; any legal process by which a party endeavors to obtain his claim or what he regards as his right. Case, ground of action. Repalje defines cause to be, "In practice, a suit or action, any question, civil or criminal, contested before a court of justice."

The evident purpose of the statute is to prevent a probate judge from passing upon questions in which he is interested. That is, matters in which the judgment to be rendered might affect him in some way, either directly or indirectly. This purpose can

only be subserved by disqualifying him to pass upon any matter pending in his court when the result of his action might be of personal interest to him. It will be noticed that the statute covers a number of things and the term case or cause is used to describe each of them. Thus he cannot sit in a case in which he is interested or in which he has been counsel or a material witness or related to either party, etc. In either of these cases, upon a proper affidavit being made, he shall certify the cause to the county or circuit court, ''Which court shall hear and determine the cause.'' The only thing certified may be upon one account alone as was the case in Keele v. Keele, 118 App. 262, 94 S. W. 775, while the general administration of the estate remains with the probate court. In that event the ''case'' certified to the other court for trial is the one question of the account and the only thing tried in that court is the one account while at the same time the case or cause as applied to the entire matter remains in the probate court. The term case or cause may have a broad or restricted meaning according to the connection in which it is used and our conclusion is, that, as used in the statute above referred to, it means any matter pending before the probate judge which is the subject of judicial investigation, and hence, the entire matter of the inquiry as to the sanity of Emma Hawkins and if found insane the appointment of a guardian for her is contemplated in this statute and the probate judge may be disqualified to hear a complaint of this kind the same as in any other matter pending before him. [Gold v. Vermont Central R. R., 19 Vt. 478, 484.]

Was the affidavit sufficient? The record of the probate court recites that on the hearing of the motion or application in that court it was admitted that the affiants, Arthur C. and J. Floyd Morris, ''Had no financial interest directly or indirectly in this cause,'' and it was for that reason, coupled with the further

fact that in the opinion of the probate judge the motion was not in proper form, that the motion was overruled. At the hearing in the circuit court in this proceeding evidence was heard pro and con on the question whether or not one of the affiants had a financial interest by reason of having been a partner in business with the alleged insane person and that said partnership was still unsettled. We are of the opinion that none of this testimony was admissible. The probate judge could not go behind the affidavit to ascertain its truth or falsity nor could the affiants seek ulterior aid to supply its deficiencies. [State ex rel. v. Gray, 100 App. 98, 72 S. W. 1081.] This view is clear from both the language of the statute and the purpose for which it was enacted. The language of the statute is, "No judge of probate shall sit in a case in which he is interested . . . . . when any party in interest shall object in writing, verified by affidavit *and when such objections are so made* such cause shall be certified, etc." (the italics are ours). This language clearly means that the whole question of whether the case shall be certified to another court is to be determined from the face of the affidavit for it provides no way by which the truth or falsity of the affidavit may be determined; but it plainly provides that "when such objections are so made"—which cannot mean anything but that when a party in interest shall by affidavit allege that the judge is interested—the case must be certified to another court. Were this not true and could oral evidence be heard upon any question connected with the matter then it could be heard upon all questions and thus the judge himself be permitted to pass upon all questions relating to his own disqualification. If this were true, the very purpose of the statute would be defeated for if a judge of any court were permitted to pass upon a question of fact connected with his own interest in or relationship to a case, or a party in interest in a case, it is apparent that he would have it in

his power to prevent the very thing the statute was enacted to secure, which is, a hearing of the matter before a disinterested and impartial judge.

Since the question is to be determined upon the face of the affidavit alone it is essential that the facts which make it necessary that the case should be certified to another court should appear on the face of the affidavit. These facts are that the affidavit should be made by an interested party and that it should allege some statutory ground for disqualifying a judge. Whether it is necessary to set out in the affidavit what the interest or relationship of the judge is, or whether it is sufficient to follow the language of the statute and make an allegation in general terms it is not necessary for us to decide in this case because that question is not raised; but whether essential to set out the facts or not it would certainly be the better practice to do so. But as to the party making the affidavit being a party in interest we are clearly of the opinion that unless the record already shows him to be a party in interest the facts which show him to be a party in interest should be set out; otherwise there would be nothing in the files or the record to show his right to interfere and manifestly that statute does not contemplate that a mere volunteer with no interest in the case should be permitted to force the removal of a cause to another court. This principle seems to have been recognized by the affiants for they do state in the affidavit that they are brothers of said Emma Hawkins. This alleged relationship is the only thing appearing in the affidavit to indicate that they were parties in interest. We do not think this sufficient. Consanguinity or friendship is not what the statute means by requiring the affidavit to be made by a party in interest. If it were blood relationship, to what extent would it be permitted to go? If a brother may make the affidavit and oust the court of jurisdiction may not a cousin or a fourth cousin also, and so

if that were allowable it must extend to the slighest degree of blood relationship and if a distant blood relation, why not any party interested through motives or friendship alone. We think that by party in interest in this proceeding is meant a party who has a financial interest either directly or indirectly. To begin with it is the fact that an insane person has property that he is incapable of controlling or managing that gives the probate court jurisdiction to act at all. The statute which authorizes this inquiry, Sec. 474, Stat. 1909, is as follows:

"If information in writing be given to the probate court that any person in its county is an idiot, lunatic or person of unsound mind, and incapable of managing his affairs, and praying that an inquiry thereinto be had, the court, if satisfied that there is good cause for the exercise of its jurisdiction, shall cause the facts to be inquired into by a jury: Provided, that the probate court shall not have jurisdiction to inquire into the insanity of any person who is the owner of no property."

By this statute the affidavit on which the insanity inquiry is based is required to state two things, viz., that the party is an idiot, lunatic, or person of unsound mind and that he is incapable of managing his affairs. The allegation that he in incapable of managing his affairs is as essential as the allegation that he is of unsound mind. The statute then closes with the express provision that the probate court shall not have jurisdiction to inquire into the sanity of any person who is the owner of no property. From this it is clear that the basis of the probate court's jurisdiction is the ownership of property by the alleged insane person and it is for the purpose, primarily, of caring for that property that the probate court is given jurisdiction. If upon the inquiry the party is found to be possessed of no property the probate jurisdiction is lost even though the party may be insane, for the ju-

risdiction in such a case is vested in the county court, whose duty it would be, under other provisions of the statute to have the unfortunate cared for. The party making the affidavit upon which the inquiry is based is a party in interest for he may become liable for costs, but other parties in interest must be those whose financial interests are to be affected in some way by the judgment that might be rendered. A partner in business with the alleged insane person, or one who had been a partner with him and between whom there were unsettled partnership accounts, would be a party in interest, and in this case if the affidavit had shown these facts upon its face we think it would have been sufficient as against the objection that the affiant was not a party in interest. That however was not done and from the record in this case it appears that the attempt to inject that fact into the case by oral proof in the circuit court was an afterthought for the probate record shows that it was conceded in that court that the affiants had no financial interest.

Our conclusion on the whole case is that the affidavit was insufficient on its face and the probate court was therefore justified in overruling it and the circuit court was wrong in ordering a peremptory writ requiring him to certify the case to another court. Judgment reversed. All concur.